UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

MARSHALL P. GRAVES                                                        PETITIONER

VERSUS                                              CIVIL ACTION NO. 2:17CV141-KS-RHW

SUPERINTENDENT J. BANKS                                                   RESPONDENT

## PROPOSED FINDINGS OF FACT AND RECOMMENDATION

Marshall P. Graves filed a 28 U.S.C. § 2254 petition for writ of habeas corpus

challenging his state court conviction and sentence.  A jury in the Circuit Court of Lamar

County, Mississippi, convicted Graves on two counts of fondling (Miss. Code Ann. § 97-5-

23(1)) and one count of sexual battery (Miss. Code Ann. § 97-5-95(1)(d)).  Doc. [10-2] at 67,

127-30.  The alleged victim, G.W., was 10 years old at the time of the incident.  The evidence at

trial consisted primarily of the victim's testimony, as well as testimony from individuals with

whom G.W. had spoken about her encounters with Graves.  Graves also was charged and

sentenced under Mississippi's habitual offender statute (Miss. Code Ann. § 99-19-81).  *Id.* at

128.  The trial court sentenced Graves to serve prison terms of 15 years on each count of

fondling and life imprisonment for sexual battery, with the sentences to be served concurrently.

Doc. [10-2] at 127-30.  Graves filed a notice of appeal.

Graves' appellate counsel (Daniel Hinchcliff) filed a brief in compliance with *Lindsey v.*

*State of Mississippi*, 939 So.2d 743 (Miss. 2005), certifying to the Mississippi Supreme Court

that the record presented no arguable issues for appeal.  Doc. [10-7] at 2-12.  Graves also filed a

*pro se* appellate brief raising numerous issues he felt should be considered on appeal: (1)

defective indictment; (2) ineffective assistance of counsel; (3) evidence of prior bad acts

presented to the jury; (4) trial court allowed testimony of a surprise witness; (5) admission of

hearsay; (6) sufficiency of the evidence; (7) conflicting witness testimony; (8) jury verdict against the overwhelming weight of evidence; (9) prosecutorial misconduct; (10) trial court improperly denied motion to sever the indictment; (11) prosecution's reference to a jury instruction during closing argument; and (12) cumulative error. Doc. [10-7] at 60-112. The Mississippi Supreme Court found that Graves' appeal presented no arguable issues and therefore affirmed his conviction and sentence. *Graves v. State of Mississippi*, 216 So.3d 1152 (Miss. 2016). Graves then pursued several claims with the State court in an application for post-conviction collateral relief and two subsequent amended applications: (1) trial counsel failed to provide competent and loyal assistance when representing Graves; (2) trial counsel failed to object to prosecutorial misconduct; (3) trial counsel failed to inform Graves of a five-year plea bargain offered by the State; (4) the verdict was not supported by the weight and sufficiency of the evidence; (5) jury instruction number six was unconstitutional; (6) appellate counsel was ineffective; and (7) witness perjury violated Miss. Code Ann. § 97-9-59 and the Confrontation Clause. Doc. [9] at 5-23, 31-103. The Mississippi Supreme Court denied Graves' applications. *Id.* at 3-4.

Graves next filed the instant § 2254 federal habeas petition and accompanying memorandum wherein he asserted the following claims: (1) trial counsel was ineffective because he (a) vouched for a prosecution witness, (b) failed to raise timely objections to prosecutor's expression of personal beliefs or opinions as to Graves' guilt, (c) failed to object to the prosecutor referring to Graves as a pedophile, child molester, pervert, and sexual predator, (d) failed to hire expert witnesses, (e) failed to obtain a medical examination of the victim, (f) elicited prejudicial testimony from the victim on cross-examination, (g) should not have introduced into evidence the child advocacy counselor's videotaped interview with the victim,

(h) failed to object to the tender years hearsay testimony, (i) failed to inform Graves of a plea offer of five years, and (j) failed to object to prosecutorial misconduct during closing argument; (2) the evidence was insufficient to sustain the conviction; (3) the trial court erred in allowing jury instruction number six; (4) ineffective assistance of appellate counsel; and (5) the cumulative effect of errors deprived Graves of a fair trial.  Doc. [2] & [3].

Graves filed a motion for summary judgment, which the Court denied.  Doc. [11] [21] [25].  The undersigned concluded that Graves' motion for summary judgment was procedurally improper and unnecessary.  In treating Graves' petition; however, the undersigned has considered the arguments raised in his "Demand for Summary Judgement" filed on February 22, 2018.  *See* Doc. [21] at 3.

By Order dated February 13, 2020, the Court directed Respondent to supplement the record.  Doc. [34].  The Court instructed Respondent to provide the Court with a copy of the videotaped interview of G.W. conducted by Cheryl Caldwell.  This interview was introduced at the trial as Exhibit 1 and played to the jury.  The State court record originally filed with Respondent's answer did not include a copy of the interview.  The Court further instructed Respondent to supplement the record regarding Graves' claims of ineffective assistance of counsel relating to an alleged five-year plea offer and relating to counsel's decision not to use the services of Dr. Julie Teater as an expert witness.  Respondent supplemented the record as directed.  Respondent also supplemented the response in opposition to Graves' petition based on the additional evidence of record.  Doc. [44] [45].  Graves then filed a response to Respondent's supplementation.  Doc. [46] [47].  The matter is now ripe for disposition.

**Procedural Bar**

Respondent argues certain of Graves' claims are procedurally barred by an independent and adequate state procedural rule. Specifically, the Mississippi Supreme Court held that Graves' stand-alone claims of prosecutorial misconduct and his claim regarding jury instruction number six are barred by Mississippi's contemporaneous objection rule. *See Graves*, 216 So.3d at 1161-62. "When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal habeas is generally barred if the state procedural rule is independent and adequate to support the judgment." *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001). State procedural bars are independent and adequate when the state has strictly or regularly applied them to the vast majority of similar cases. *Id.* The Fifth Circuit has held Mississippi's contemporaneous objection rule is an independent and adequate state procedural bar. *See Johnson v. Puckett*, 176 F.3d 809, 824 (5th Cir. 1999); *Smith v. Black*, 970 F.2d 1383, 1387 (5th Cir. 1992). Petitioner bears the burden of showing the state does not strictly or regularly follow the procedural bar. *Williams v. Puckett*, 283 F.3d 272, 280 (5th Cir. 2002). Graves has made no such showing in this case. In his response, Graves does not challenge whether these claims are procedurally barred. Thus, he appears to abandon claims of prosecutorial misconduct, except insofar as they relate to claims of ineffective assistance of counsel. He also appears to have abandoned his claim regarding jury instruction number six.

**Standard of Review**

Respondent concedes that each of the remaining claims raised in Graves' § 2254 petition was considered and rejected by the Mississippi Supreme Court. Accordingly, the Court must consider those claims in light of 28 U.S.C. § 2254 (d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be

4

granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;

   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Subsection (d)(2) applies to a state court's factual determinations, and subsection (d)(1) governs review of questions of law and mixed questions of law and fact. *See Morris v. Cain*, 186 F.3d 581, 584 (5th Cir. 2000).

As to questions of law, a federal court must defer to the state court's decision on the merits of such claim unless that decision was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court. A state court decision is contrary to federal law when the state court reaches a conclusion opposite to that of the United States Supreme Court on a question of law or if the state court decides a case differently than the United States Supreme Court has on a set of materially indistinguishable facts. *Murphy v. Dretke*, 416 F.3d 427, 432 (5th Cir. 2005). A state court decision involves an unreasonable application of federal law when the state court properly identifies the applicable federal principle but unreasonably applies the principle to the facts of the petitioner's case. *Id.*

As to questions of fact, federal habeas courts presume that state court factual findings are correct unless the findings are "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *See Knox v. Johnson*, 224 F.3d 470, 476 (5th Cir. 2000). Section 2254(d)(1) imposes a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."

*Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).  A federal habeas court presumes that the state court's findings of fact are correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Murphy*, 416 F.3d at 432.  As both the United States Supreme Court and the Fifth Circuit have recognized, a criminal defendant is not constitutionally entitled to a perfect trial, just a fair one.  *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986); *Sawyer v. Butler*, 848 F.2d 582, 594 (5th Cir. 1988).

### (1) <u>Ineffective Assistance of Trial Counsel</u>[1]

Graves raises a litany of ineffective assistance of counsel claims against his court-appointed attorneys, Robert Whitacre and Shirlee Baldwin.[2]  The Mississippi Supreme Court already considered and rejected these claims on post-conviction review citing to *Strickland v. Washington*, 466 U.S. 668 (1984).  Federal courts examine ineffective assistance of counsel claims on habeas review pursuant to *Strickland*.  To satisfy *Strickland*, petitioner must demonstrate not only that counsel was objectively deficient and not functioning as the counsel guaranteed the defendant by the Sixth Amendment, but also that this deficient performance prejudiced the defense.  *Id.*  In order to show that counsel's performance was deficient, petitioner "must identify the acts and omissions of counsel that are alleged not to have been the result of reasonable judgement."  *Id.* at 690.  For the second prong, in order to show that his defense was prejudiced, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different."  *Id*. at 694.

---

[1] Respondent indicated that defense counsel's antagonism towards Graves was one of the bases for Graves' claims of ineffective assistance of counsel.  Doc. [9] at 22.  In his response, Graves denies defense counsel was antagonistic or that defense counsel's antagonism is a basis for his claim of ineffective assistance of counsel.  Doc. [18] at 3.  Hence, the undersigned will not consider this claim.

[2] On the eve of trial, the court appointed Shirlee Baldwin as co-counsel to assist in Graves' defense.  Doc. [10-2] at 22.  Graves' complaints of ineffective assistance of counsel are directed primarily at Mr. Whitacre; however, he also contends Ms. Baldwin provided ineffective assistance of counsel.

Furthermore, "a court need not address both prongs [of an ineffective assistance of counsel claim,] ... but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test." *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir.1995).

In assessing a challenge under the Sixth Amendment, the court must determine whether there is a gap between what counsel actually did and what a reasonable attorney would have done under the circumstances. *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001). In other words, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). Judicial scrutiny of counsel's performance is highly deferential and must be considered in light of the services rendered at the time, rather than by a distorted view of 20/20 hindsight. *Lavernai v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988).

The Mississippi Supreme Court found no merit to Graves' claims of ineffective assistance of counsel. Where the merits of an ineffective assistance claim have been rejected by the state court, the "pivotal question" in a § 2254 proceeding "is whether the state court's application of the *Strickland* standard was unreasonable", an inquiry which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The state court's decision "must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself" because the standards created by *Strickland* and § 2254(d) are both highly deferential. *Id.*

### Vouching for Witness Peggy Sealy

Graves argues trial counsel was ineffective because he vouched for witness Captain Peggy Sealy of the Hattiesburg Police Department. Specifically, during closing argument, defense counsel stated "[Mr. Sprayberry] testified truthful, he is one of the only truthful—fully

truthful witnesses that we had, besides Peggy Sealy." Doc. [10-6] at 45. Graves contends that defense counsel's statement gave jurors a personal assurance that Captain Sealy was a "fully truthful" witness, thereby depriving jurors of their role as fact finders weighing the testimony and assessing the credibility of witnesses.

During the State's case-in-chief, Captain Sealy testified that she investigated the reported sexual assault of G.W. Doc. [10-5] at 127-28. As part of her investigation, Captain Sealy interviewed the victim, the victim's mother, and several other individuals. *Id.* at 128-29. Captain Sealy testified as to what G.W. told her about the sexual encounters with Graves. *Id.* at 129-31. Defense counsel subjected Captain Sealy to a thorough cross-examination, eliciting testimony that the victim had spoken to several adults before Captain Sealy conducted her interview with G.W. *Id.* at 143-51. Defense counsel also questioned Captain Sealy regarding G.W.'s recollection of certain details about her encounter with Graves. *Id.*

Defense counsel spent very little time in closing argument discussing Captain Sealy's testimony or its truthfulness. Defense counsel's single, isolated comment about the truthfulness of Peggy Sealy's testimony does not rise to the level of a Sixth Amendment denial of effective assistance of counsel. Captain Sealy was not an eyewitness to the alleged crime. She merely reported what the victim told her. Immediately after mentioning the "truthfulness" of Captain Sealy's testimony in closing, and consistent with his theory of the case, defense counsel argued "[the victim] told a story, and they just testified, each one of these other witnesses, testified to the story that they heard." Doc. [10-6] at 45. Even if the jury agreed that Captain Sealy was one of the only fully truthful witnesses to testify, defense counsel argued Captain Sealy merely repeated a fabricated and everchanging story she heard from the victim. *See id.* at 41. Thus, Graves has failed to show how defense counsel's single, isolated comment about the truthfulness of Sealy's

testimony prejudiced his defense such that it rises to the level of ineffective assistance of counsel.

### Failing to Object to Prosecutor's Statements

Graves contends counsel was ineffective because he failed to object to several instances of prosecutorial misconduct. Graves points to the prosecutor's closing argument wherein she expressed personal beliefs or opinions about Graves' guilt, argued facts not in evidence, asserted the truthfulness of witnesses' testimony, and otherwise made improper jury argument. One of Graves' primary points of contention focuses on the prosecutor's vilifying Graves by referring to him as a "pedophile", "pervert", "sexual predator", and "child molester". Graves raised this argument in his application for post-conviction relief and argued trial counsel should have objected to the prosecutor's name-calling. The Mississippi Supreme Court considered the claim and rejected it.

"A decision not to object to a closing argument is a matter of trial strategy," and, as such, is accorded great deference. *Drew v. Collins*, 964 F.2d 411, 423 (5th Cir. 1992). Even where an objection might have some chance of succeeding, an attorney is allowed to make a strategic choice to forgo such an objection to avoid antagonizing the jury. *See Wiley v. Puckett*, 969 F.2d 86, 102 (5th Cir. 1992). "[C]ounsel's failure to object to improper remarks by a prosecutor is not ineffective assistance unless the remarks are so prejudicial as to render the trial fundamentally unfair." *Jones v. Estelle*, 632 F.2d 490, 492-93 (5th Cir. 1980). Due process requires reversal when the prosecutor's argument or comments "so infect the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). To obtain federal habeas relief based on allegations of improper prosecutorial comment or argument, a petitioner "must demonstrate that the misconduct [was] persistent and pronounced or

that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." *Jones*, 864 F.2d at 356.

During closing remarks, the prosecutor used the terms "pedophile", "pervert", "sexual predator", and "child molester". *See* Doc. [10-6] at 33, 54-55. She began by asking the jury "[w]ho are pedophiles? Nobody knows. Nobody can look at another person and say that person is a pedophile." Doc. [10-6] at 33. The prosecutor continued to expound on the nature of "pedophiles". She said "[p]edophiles, perverts, whatever you want to call them, they hide their inclinations, they hide their desires. They make sure they can commit these crimes without getting caught a lot of the time." *Id.* In these initial remarks, the prosecutor did not directly refer to Graves as a "pedophile" or "pervert", she merely commented on the general nature of pedophilia and perversion. Such general remarks did not render the trial fundamentally unfair. Graves contention that defense counsel should have objected is without merit.

The prosecutor then brought her general discussion back to Graves, telling the jury "[y]ou've heard a textbook case of a pedophile, a pedophile on an admission. But he was a pedophile that was stopped. What stopped him? A 10-year-old little girl stopped him." Doc. [10-6] at 33. Graves asserts trial counsel should have objected when the prosecutor stated that Graves admitted being a pedophile. Graves mischaracterizes the record. As transcribed, the prosecutor argued to the jurors that they have "heard a textbook case of a pedophile, a pedophile on an admission." *Id.* When read in context, it is clear the prosecutor was not arguing that Graves admitted being a pedophile. Rather, she was arguing Graves was a "pedophile on a mission". Defense counsel was not ineffective for failing to object to prosecutor's apparent misstatement.

The prosecutor did not make any further comments referring to Graves as a pedophile or molester until the very conclusion of her closing argument. Towards the end, the prosecutor stated, "Marshall Graves is the poster child for a sexual predator, for a molester." *Id.* at 54. She ended her argument by saying "there is no doubt that Marshall Graves is a pedophile and should be found guilty as to all three counts." *Id.* at 55.

Counsel's failure to object to these statements does not rise to the level of constitutionally ineffective assistance of counsel. Under Mississippi law, prosecutors are given wide latitude in closing remarks, as long as their comments are supported by the evidence and testimony presented at trial. *See Taylor v. State of Mississippi*, 744 So.2d 306, 311 (Miss.Ct.App. 1999). Reversal is not merited unless the remarks by the prosecuting attorney during closing argument create "unjust prejudice against the accused resulting in a decision influenced by prejudice." *Johnson v. State of Mississippi*, 596 So.2d 865, 869 (Miss. 1992). Counsel is not ineffective by failing to object to proper jury argument. *Lauti v. Johnson*, 102 F.3d 166, 170 (5th Cir. 1996).

In the context of direct criminal appeals, the Fifth Circuit has held that the prosecution may permissibly argue to the jury the "inferences and conclusions" it should draw from the evidence, so long as the assertions are based on the evidence. *United States v. Delgado*, 672 F.3d 320, 336 (5th Cir. 2012) (citations omitted). "Moreover, 'unflattering characterizations of a defendant will not provoke a reversal when such descriptions are supported by the evidence.'" *Delgado*, 672 F.3d at 336 (quoting *United States v. Windom*, 510 F.2d 989, 994 (5th Cir. 1975)) (finding no error in a prosecutor's reference to a defendant as a "con artist"). "The use of colorful pejoratives is not improper." *United States v. Shoff*, 151 F.3d 889, 893 (8th Cir.1998); *see United States v. Malatesta*, 583 F.2d 748, 759 (5th Cir. 1978) ("Unflattering

characterizations of a defendant do not require a new trial when such descriptions are supported by the evidence.").

The victim in this case testified that Graves molested her and committed sexual battery upon her when she was ten years old. Thus, the prosecutor's unflattering references to Graves as a "pedophile" or "molester" were supported by the evidence presented at trial. *See Lemoine v. Vanney*, 2018 WL 526564, at *13-14 (E.D.La. Mar. 15, 2018) (finding no ineffective assistance of counsel for failing to object when prosecutor referred to petitioner as "pervert", "child molester", and "rapist" during closing arguments); *Case v. State of Mississippi*, 187 So.3d 177, 184 (Miss.Ct.App. 2015) (finding no merit to defendant's claim where prosecutor referred to defendant as pedophile four times during closing argument because "the prosecutor's comments, taken in context, show[ed] that the prosecutor was commenting on the facts presented in the evidence."); *Divine v. State of Mississippi*, 947 So.2d 1017, 1022 (Miss.Ct.App. 2007) (upholding decision denying a motion for mistrial after prosecutor referred to defendant as sexual predator and child molester during closing argument in trial for sexual battery of a minor). The comments Graves finds objectionable were confined to closing argument and to a narrow part of closing argument. They are found on a mere three pages of the entire trial transcript. The comments are not so persistent and pronounced that they infected the entire trial or rendered the trial fundamentally unfair.

In his response, Graves cites to *White v. State of Mississippi*, 228 So.3d 893 (Miss.Ct.App. 2017) and argues that referring to the accused as a "pedophile" serves no other purpose than to inflame the jury and prejudice the defendant. In *White* the Mississippi Court of Appeals confronted numerous incidents of prosecutorial misconduct throughout the defendant's trial and found plain error to warrant reversal. *White* is distinguishable for a variety of reasons.

In addition to prosecutorial misconduct, the *White* court determined that the trial court committed several evidentiary errors justifying reversal.  Moreover, the prosecutor's statements and general misconduct were far more egregious than anything presented in Graves' trial.  The appellate court concluded that the accused was denied due process "by the repeated and persistent acts of prosecutorial misconduct".  *Id.* at 904.  For example, during a speaking objection on relevance, the prosecutor in *White* stated that the accused "was raping" the victim.  *Id.* at 905.  During cross-examination of the defendant, the prosecutor stated her personal belief that "I know what you've been accused of happened."  *Id.*  At another time, the prosecutor asked the accused questions about "raping" the victims and suggested that the defendant had a pattern of committing rape whenever he got the opportunity around kids.  *Id.* at 906.  The prosecution questioned defendant about whether he had been unfaithful to his first wife and whether he gave his first wife two sexually transmitted diseases while she was pregnant, even though these questions were irrelevant.  *Id.*  In addition, the prosecutor in *White* commented on evidence excluded by the court, argued facts not in evidence, and commented on the credibility of witnesses and the truthfulness of their testimony.  *Id.* at 908-10.  Graves' trial simply does not present the type or persistence of errors and misconduct as presented in *White*.

Graves identifies additional comments made by the prosecutor during closing arguments which he argues were improper and should have elicited an objection from trial counsel.  He contends the prosecutor argued facts not in evidence.  G.W. testified that Graves told her to take a bath after one of the sexual encounters.  Doc. [10-4] at 142.  When referring to G.W's testimony in closing argument, the prosecutor argued to the jury:

> Why do you think he really wanted her to take a bath?  In case anything came out of penis and got on her.  I think that's why he wanted her to take a bath.  But 10-year-old [G.W.] didn't think about that because she's a kid.

Doc. [10-6] at 35.  Graves argues the evidence indicates the opposite conclusion, because G.W. testified that nothing came out of Graves' penis during the encounter.  Doc. [10-5] at 26.  If defense counsel had objected, the trial court may have sustained the objection and instructed the jury to disregard the prosecutor's statement.  However, whether anything came out of Graves' penis during the sexual encounter is immaterial to the elements of the crimes of conviction. Graves was convicted of fondling G.W. and penetrating her vagina with his finger.  Moreover, the trial court previously instructed the jury that "[r]emarks of counsel are intended to help you understand the evidence and apply the law, but they are not evidence.  If any remark of counsel has no basis in evidence, then you must disregard it."  Doc. [10-2] at 40.  The jury is presumed to have followed the instructions given.  *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Keeping in mind that defense counsel's decision not to object during closing argument is generally deemed trial strategy and afforded great deference, the undersigned concludes that trial counsel's decision not to object did not constitute deficient performance.  Moreover, Graves does not identify any *Strickland* prejudice from the prosecutor's misstatement of the testimony.

Graves further objects to the prosecutor's argument that the police sent G.W. to the Child Advocacy Center because "they believe it."  Graves takes this statement out of context.  In its entirety, the prosecutor's remarks are as follows:

> Then the police get involved.  What do the police do?  They take two different statements.  They send [G.W.] to the Child Advocacy Center.  They believe it.  They prepare an affidavit that lays out all these details.  Doc. [10-6] at 38.

During the State's case-in-chief, Captain Peggy Sealy testified she interviewed and took a statement from G.W.  Doc. [10-5] at 130-31.  After interviewing G.W. and other witnesses, Captain Sealy sent G.W. to the Child Advocacy Center to be interviewed.  *Id.* at 131-32.  Based on these interviews, Captain Sealy issued a warrant for Graves' arrest.  *Id.* at 132.  As part of the

14

arrest warrant, Captain Sealy prepared a sworn affidavit with the underlying facts from her investigation. *Id.* Based on the foregoing, the prosecutor's argument was consistent with the testimony presented at trial; therefore, defense counsel's failure to object does not constitute ineffective assistance of counsel.

Graves further complains that the prosecutor told the jury that Angie Warren testified "she knew, beyond a shadow of a doubt, I think were her words, that it happened." Doc. [10-6] at 38. Graves is correct that Ms. Warren did not testify to the effect that she believed the incidents happened "beyond a shadow of a doubt". Rather, at one point, Ms. Warren said, "there's no doubt in my mind that it was eating [G.W.] up inside." Doc. [10-5] at 48. It appears the prosecution did not accurately recall Ms. Warren's testimony. In fact, the prosecutor qualified her restatement of the testimony by saying "I think were her words". If defense counsel had objected to the prosecutor arguing facts not in evidence, it is likely the objection would have been sustained. However, the trial court previously instructed the jury that "[r]emarks of counsel are intended to help you understand the evidence and apply the law, but they are not evidence. If any remark of counsel has no basis in evidence, then you must disregard it." Doc. [10-2] at 40. The jury is presumed to have followed the instructions given. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Graves does not explain how this minor mischaracterization of the testimony prejudiced his defense. Furthermore, defense counsel's decision not to object during closing argument is generally deemed trial strategy and afforded great deference.

Graves contends the prosecution improperly told the jury in closing argument that Reilly Warren is "telling you the truth." Doc. [10-6] at 36. Graves also argues the prosecution

improperly argued during closing argument that G.W. was telling the truth.  He cites to the

following excerpt as improper jury argument:

> The truth is that what [G.W.] told you on that witness stand is the
> same thing that [G.W.] told Reilly, Angie, Toni Clark, Peggy
> Sealy, Cheryl Caldwell, and you.  She told you all the same thing.
> What happened to [G.W.] has not changed.  She was 10 years old
> when those things happened.  She is 14 years old now.  It was the
> truth when she was ten, it's the truth now three-and-a-half years
> later, and it will be the truth 30 years from now ….  She's going to
> tell that 30 years from now, because that is the truth, because that
> is what happened to [G.W.].

Doc. [10-6] at 50-51.  Assuming *arguendo* that counsel should have objected to the prosecutor's

statement, Graves fails to explain how the prosecutor's statements about the truth of Reilly

Warren's or G.W.'s testimony prejudiced his defense.  In fact, he concedes that the remarks

standing alone may not be enough to constitute ineffective assistance of counsel.  Doc. [3] at 7-8.

Given that defense counsel's decision not to object during closing argument is generally deemed

trial strategy and afforded great deference, counsel's lack of objection does not constitute

deficient performance.

Graves argues the prosecutor improperly argued to the jury "it is your job to hold him

accountable for the things that he did.  Do not let [G.W.]'s testimony go in vain.  You hold him

accountable for the things that he did to her."  Doc. [10-6] at 56.  Graves further argues the

prosecutor improperly argued "[G.W.] has been victimized a second time by Mr. Graves by

having to relive [the incidents] on the stand".  Doc. [10-6] at 51.  Graves concedes these

statements standing alone may not be sufficient to constitute ineffective assistance of counsel.

Doc. [3] at 8, 10.  Regardless, Graves fails to explain how these statements meet the prejudice

requirement under *Strickland*.  Given that defense counsel's decision not to object during closing

argument is generally deemed trial strategy and afforded great deference, counsel's lack of

objection does not constitute deficient performance.

**Failure to Hire Expert Witnesses**

Petitioner argues trial counsel was ineffective because he did not hire expert witnesses on Graves' behalf. While it is true that Graves' trial counsel did not retain any experts, his earlier-appointed counsel (Scott J. Schwartz) filed a pre-trial motion requesting funds to hire an expert witness. Doc. [10-1] at 45. Mr. Schwartz asserted that Graves was "in need of a [sic] expert witness to review the Child Advocacy Center interview and to offer testimony regarding the contents of that interview and the protocols used in that interview." *Id.* The trial court granted Graves' motion to retain Dr. Julie Teater to review the interview. *Id.* at 50. Mr. Schwartz also filed a motion for funds to retain a polygraph expert. *Id.* at 54-55. The trial court granted this motion as well and authorized funds for Graves to retain Clayton Polygraph Services, LLC. *Id.* at 57. Neither of the experts identified by Mr. Schwartz testified at trial. According to Graves, Mr. Whitacre chose not to use Dr. Teater's services despite the funds being provided. Doc. [2] at 7. Graves makes no mention of the polygraph expert in his petition.[3]

"Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative." *Sayre*, 238 F.3d at 635-36. To show prejudice, the petitioner must "demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Similarly, to prevail on an ineffective assistance of counsel claim based upon failure to investigate, petitioner must allege with

---

[3] There is an order authorizing payment and an invoice for $400.00 paid to Clayton Polygraph Services, LLC. Doc. [10-1] at 58-60. Thus, it appears Mr. Schwartz did use the services of the polygraph expert in preparing the case for trial.

specificity what the investigation would have revealed and how it would have altered the outcome of the trial. *Trevino v. Davis*, 829 F.3d 328, 338 (5th Cir. 2016).

Although Graves believes Dr. Teater should have been called as a witness, he has not identified any favorable testimony defense counsel could have elicited from Dr. Teater. Doc. [2] at 7. He merely speculates about the contents of her testimony. *See* Doc. [3] at 15. In Mr. Whitacre's affidavit, he stated he was unaware funds had been provided by the trial court to hire Dr. Teater. Doc. [44-3]. Nevertheless, Mr. Whitacre stated his "trial strategy was to discredit the complaining witness by exposing that her allegations of sexual assault differed in certain respects, depending on to whom she was speaking." *Id.* Mr. Whitacre further explained, based on his review of the victim interview, he did not think an expert witness would have affected his trial strategy. *Id.*

Given that funds had been authorized, counsel's failure to communicate with Dr. Teater or to ask her to review Ms. Caldwell's interview of the victim arguably could constitute performance below an objective standard of reasonableness. However, Graves fails to demonstrate prejudice. He does not point to any favorable testimony from Dr. Teater that would have altered the outcome of trial. In the absence of any showing of prejudice, Graves' claim must fail.

### Failure to Obtain Medical Examination

Petitioner argues defense counsel was ineffective because he did not obtain a medical examination of the victim. He argues a forensic medical examination should have been performed immediately after the incident to look for evidence of penetration. He further asserts a medical examination would have revealed whether G.W. was a virgin.

The sexual battery occurred in the summer of 2010.  The grand jury did not indict Graves until June 1, 2011, almost a year after the incident.  Doc. [10-1] at 16-17.  The state circuit court did not appoint an attorney (Mr. Schwartz) to represent Graves until August 22, 2011.  *Id.* at 23.  Graves expressed dissatisfaction with Mr. Schwartz as his court-appointed attorney.  *Id.* at 64.  As a consequence, on March 25, 2013, the court appointed Mr. Whitacre to represent Graves.  *Id.* at 68.  Given the time gap between the alleged crime and counsel's appointment, it is understandable that counsel would not have requested a medical examination.  Any evidence from a medical examination after such a long interval would have been of questionable value.  *See e.g. Boulds v. Thaler*, No. H–10–1799, 2011 WL 3325854, at *10 (S.D.Tex. Aug. 1, 2011) (examining physician testified that rape kit after two-week interval between rape and examination would not have been informative).  Graves' speculative assertion that a medical examination long after the incident would have revealed whether the victim was a virgin is not an adequate demonstration of prejudice under *Strickland*.  The indictment and testimony did not allege that Graves had sexual intercourse with G.W.  Rather, Graves was accused of penetrating her vagina with his finger.  The question of her virginity one to three years after the incident would not have been material to his defense.

### Victim's Prejudicial Testimony on Cross-Examination

Graves argues trial counsel was ineffective because he elicited prejudicial testimony from the victim during cross-examination.  While being cross-examined by defense counsel, G.W. testified that Graves penetrated her; whereas, on direct examination, the prosecutor only elicited testimony from G.W. that Graves "molested" her on two occasions.  Graves contends defense counsel's cross-examination prejudiced his defense by introducing evidence of penetration.

Graves was convicted of sexual battery under Miss. Code Ann. § 97-5-95(1)(d).

Penetration is one of the essential elements of the crime of sexual battery. Mississippi law

defines sexual penetration to include "any penetration of the genital or anal openings of another

person's body by any part of a person's body, and insertion of any object into the genital or anal

openings of another person's body." Miss. Code Ann. § 97–3–97(a). The Mississippi Court of

Appeals has held that "[p]enetration is the very essence of the crime of sexual battery." *Jenkins*

*v. State of Mississippi*, 101 So.3d 161, 166 (Miss.Ct.App. 2012).

During direct examination, G.W. did not testify that Graves penetrated her with his

finger. She merely testified that Graves touched her private parts with his hand. Doc. [10-4] at

140. During cross-examination, however, defense counsel asked G.W. whether she told her

friend Reilly that Graves had penetrated her in any way. *Id.* at 150. G.W. answered "no". *Id.*

For impeachment purposes, defense counsel played for the jury a video of G.W.'s interview with

Cheryl Caldwell, a counselor with the South Mississippi Child Advocacy Center. Doc. [10-5] at

2-3, 6. During the videotaped interview, G.W. indicated Graves penetrated her with his finger.

*Id.* at 29. Defense counsel later asked G.W. the name of the first person she told about Graves

putting his finger inside of her. Doc. [10-5] at 28. She answered "Ms. Caldwell". *Id.* Other

witnesses essentially corroborated G.W's statement that Graves penetrated her with his finger

*See* Doc. [10-5] at 48-49, 63, 80, 131. Although G.W. did not use the word "penetration" in her

testimony on direct examination, other witnesses discussed the fact that G.W. told them Graves

put his finger inside of her vagina. Thus, the prosecution presented evidence of penetration in its

case-in-chief independent of defense counsel's cross-examination of G.W.

Defense counsel closely questioned G.W. about the various accounts she gave to other

individuals regarding the sexual encounter with Graves, including the fact that Graves put his

finger inside of her.  Defense counsel's cross-examination was designed to cast doubt on the

credibility of G.W.'s testimony by pointing to conflicting stories she told to other individuals.

As part of this strategy, he discussed G.W.'s failure to talk about "penetration" to her friend

Reilly and her failure to discuss Graves' finger to anyone until she was interviewed by Ms.

Caldwell.  Defense counsel's line of questioning constituted reasonable trial strategy rather than

ineffective assistance of counsel.  Graves fails to demonstrate deficient performance or prejudice

based on defense counsel's cross-examination technique.  *See Pape v. Thaler*, 645 F.3d 281, 291

(5th Cir. 2011) (counsel's decisions regarding examination of witnesses fall within category of

trial strategy).

### Child Advocacy Counselor Video

Graves argues counsel was ineffective because he introduced into evidence G.W.'s

videotaped interview with Ms. Caldwell, the Child Advocacy Counselor.  Graves contends the

interview was prejudicial, because G.W. told Ms. Caldwell of Graves' prior bad acts that had

nothing to do with the case.  During the videotaped interview played to the jury, G.W. stated

Graves was under house arrest and had a fight with his girlfriend that drew blood.  Graves argues

counsel was ineffective for introducing these prior bad acts into evidence via the videotape.

G.W. also indicated to Ms. Caldwell during the interview that Graves penetrated her vagina with

his finger, thereby introducing further prejudicial evidence.

Defense counsel explicitly introduced the videotape into evidence for impeachment

purposes.  Doc. [10-5] at 2-7.  His decision to introduce the video fit within a well-reasoned trial

strategy.  During the cross-examination of G.W., trial counsel asked about apparent

inconsistencies between her testimony, her statements to other individuals, and her statements to

Ms. Caldwell.  *Id.* [10-5] at 7-10, 24-26, 28-30.  In closing argument, defense counsel continued

with this trial strategy and asserted "what if the child was just telling a story?"  Doc. [10-6] at 39.

He argued to the jury that the "story has evolved, has changed.  This is the story that snowballs

out of control."  *Id.*  He further asserted "[t]his was a fantasy that [G.W.] concocted and that she

related to her girlfriend."  *Id.* at 40.  In his closing, defense counsel specifically addressed G.W's

statements from her interview with Ms. Caldwell.  *Id.* at 42-43.

Defense counsel also used the video to cast doubt on the credibility  of the victim's

accusations.  He argued to the jury about G.W.'s demeanor and argued that she did not appear to

be traumatized.  *Id.* at 42.  Rather, she was laughing at one point during her interview.  *Id.*  In

fact, G.W. acknowledged under cross-examination that, during the interview, she was not upset

or crying.  Doc. [10-5] at 29.  She admitted being happy about skipping school for the day.  *Id.*

Counsel further argued G.W. was looking to the interviewer "for answers because so many

adults she has already talked to have provided her with the details for her story".  Doc. [10-6] at

43.  As demonstrated by closing argument, trial counsel's decision to introduce the videotaped

interview constituted reasonable trial strategy.

Based on the transcript, it appears the entire video was played to the jury, which would

have included G.W.'s statement about Graves' prior bad acts.  *See* Doc. [10-5] at 4-5.  When

discussing introduction of the videotape into evidence, the trial judge stated he wanted "the

whole thing in".  *Id.* at 5.  Defense counsel did not object to permitting the entire video into

evidence.  *Id.*  Nevertheless, Graves fails to demonstrate how the evidence of bad acts prejudiced

his defense.  Although G.W. mentioned that Graves had been under house arrest, she did not

mention any particular offense committed by Graves.  Nor does the fact that the jury heard he

had a fight with his girlfriend rise to the level of *Strickland* prejudice.  Graves fails to

demonstrate how excluding the evidence of bad acts would have produced a substantial

22

likelihood that the result of the proceeding would have been different.  *See Harrington*, 562 U.S. at 111-12.

### Tender Years Hearsay Testimony

Graves contends defense counsel was ineffective because he failed to object to the State eliciting tender years hearsay testimony.  On direct appeal, Graves argued the trial court erred in admitting hearsay statements under the tender-years exception.  *Graves*, 216 So.3d at 1160.  The Mississippi Supreme Court held the claim was procedurally barred, because counsel failed to object at trial; therefore, waiving the issue on appeal.  *Id.*  In his § 2254 petition, Graves now argues counsel's omission constitutes ineffective assistance of counsel.

The tender-years exception provides:

> A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testified at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act. Miss. R. Evid. 803(25).

Under Mississippi law, there is a rebuttable presumption that a victim under twelve years of age is considered of "tender years".  *Webb v. State of Mississippi*, 113 So.3d 592, 598 (Miss.Ct.App. 2012).  At the time of the incidents, G.W. was ten years old.

G.W. testified at trial and described the abuse perpetrated by Graves.  She also made statements to other individuals about the abuse, who in turn testified at trial about what G.W. told them.  In addition, Reilly Warren, a minor, testified about comments G.W. made to her regarding G.W.'s sexual encounters with Graves.  The trial court did not conduct a hearing to determine whether the statements at issue provided substantial indicia of reliability.  The transcript makes clear defense counsel was aware of the tender-years hearsay exception, but he

chose not to object. Doc. [10-4] at 44; Doc. [10-5] at 35-36. When the prosecutor mentioned that the State was about to elicit tender-years hearsay testimony, the trial judge was prepared to clear the courtroom to conduct a hearing outside the presence of the jury. Doc. [10-5] at 35. If defense counsel had insisted, the trial court presumably would have conducted a hearing to determine whether the statements bore substantial indicia of reliability.

Graves fails to demonstrate that defense counsel would have prevailed in challenging the testimony of minors. In support of his petition, Graves argues trial counsel should have objected to Reilly Warren's hearsay testimony because Warren's testimony of events differed from G.W.'s testimony. Doc. [18] at 19-20. Graves fails to identify any specific testimony of Warren's that differed substantially from G.W.'s testimony such that counsel's failure to object constituted deficient performance or prejudiced Graves' defense with respect to tender years hearsay. On direct examination, Reilly Warren testified that G.W. told her Graves kissed G.W., undressed G.W., and touched her in inappropriate places. Doc. [10-5] at 39. None of this testimony contradicted G.W.'s testimony. To the contrary, G.W. also testified that Graves touched her private parts, kissed her, and undressed her. *See* Doc. [10-4] at 134-35, 138-39.

Graves further argues that G.W. and her brother should have been "tender yeared [sic]" but offers no explanation for this claim. *Id.* at 20. G.W.'s brother did not testify about sexual contact or about anything G.W. told her. He simply testified as to what he observed when G.W. exited their bedroom after one of the encounters of sexual abuse. Doc. [10-5] at 121-22.

Graves fails to demonstrate prejudice resulting from counsel's failure to object. Rather, in support of his claim, he merely counters that Respondent has failed to show that Graves did not suffer prejudice. It is Graves' burden to demonstrate prejudice, not Respondent's. *See Strickland*, 466 U.S. at 687; *Clark v. Collins*, 19 F.3d 959, 964 (1994). His conclusory allegation

24

of ineffective assistance does raise a constitutional issue for federal habeas review. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

### **Failure to Relay Plea Offer**

Graves argues trial counsel was ineffective because he failed to inform Graves about the State's five-year plea offer. Graves asserts if he had known the plea offer consisted of a five-year sentence, he would have accepted it. According to Graves, he did not find out about the five-year plea offer until trial counsel responded to Graves' bar complaint nearly two years after his conviction. Doc. [2] at 9.

Graves' Sixth Amendment right to counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). The failure of counsel to inform a client of a plea offer may constitute ineffective assistance of counsel. *See Teague v. Scott*, 60 F.3d 1167, 1170-71 (5th Cir. 1995). "Defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). Defendant must show the outcome of the plea process would have been different with competent advice. *Lafler*, 566 U.S. at 165. To demonstrate prejudice, petitioner "must show not only a reasonable probability that he would have accepted the lapsed plea but also a reasonable probability that the prosecution would have adhered to the agreement and that it would have been accepted by the trial court." *Frye*, 566 U.S. at 150. Whether the prosecution and trial court are required to adhere to the agreement is a matter of state law. *Id.*

Attached as an exhibit to Graves' § 2254 petition is Robert Whitacre's response to Graves' bar complaint. Doc. [2-3]. In the response, Mr. Whitacre states Graves "was offered a plea bargain of 5 years in exchange for pleading guilty." *Id.* at 3. Mr. Whitacre "was upset"

with Graves because he "rejected the plea offer despite [Whitacre's] repeated advice that [Graves'] best interest was to take the deal." *Id.* Graves also submitted what purport to be transcripts of secretly recorded conversations between Graves and Mr. Whitacre. Doc. [2-4]. The transcript makes no mention of a five-year plea offer; however, trial counsel does state that he preferred for Graves to plead guilty rather than go to trial. *Id.* at 2. During the conversation, Graves indicated he was not guilty. *Id.*

In his pleadings, Graves admits he was aware of a plea offer from the State. He admits that counsel advised him to plead guilty rather than go to trial. At issue is whether defense counsel informed Graves that the plea offer consisted of a recommended five-year sentence, and if so, whether Graves would have accepted the plea offer rather than go to trial. In an affidavit supplementing the record, Mr. Whitacre states he orally informed Graves that if Graves pleaded guilty, the prosecution would recommend a prison sentence of five years. Doc. [44-3]. Mr. Whitacre recommended to Graves that he accept the plea offer. *Id.* According to Mr. Whitacre, Graves unequivocally rejected the plea offer, maintained his innocence, and insisted on going to trial rather than plead guilty. *Id.*

Graves has failed to demonstrate *Strickland* prejudice because he has insisted upon his innocence, both in the pleadings and at sentencing. *See* Doc. [2] at 27; [2-4] at 2; Doc. [3] at 22; Doc. [18] at 2. In the § 2254 petition, Graves states he "has maintained his innocence" from the beginning of the investigation. Doc. [2] at 27. In the memorandum in support of his § 2254 petition, Graves also admits defense counsel urged him to "just plead guilty". Even though he "was not guilty" of the crimes charged, Graves asserts he would have accepted the plea offer had he known about the five-year duration. *See* Doc. [3] at 22. In response to the State's answer, Graves' indicated that Mr. Whitacre believed Graves' was not guilty but still urged him to plead

26

guilty.  Doc. [18] at 2, 21.  Most damaging to his claim, when given the opportunity to speak at sentencing, Graves stated, "I was found guilty of crimes I did not commit.  I am only sorry my court-appointed attorney . . . did not do a better job of proving my innocence."  Doc. [10-6] at 74-75.

Based on Graves' persistent claims of innocence, he fails to demonstrate a reasonable probability that he would have accepted the plea bargain even if, assuming *arguendo*, trial counsel failed to inform him of the length of sentence contained in the plea offer.  *See Sanders v. United States*, 341 F.3d 720, 723 (8th Cir. 2003) ("[a] defendant who maintains his innocence at all the stages of his criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his later § 2255 claim that he would have pleaded guilty if only he had received better advice from his lawyer."); *Bicaksiz v. United States*, 234 F.Supp.2d (E.D.N.Y.2002) (holding defendant's insistence upon his innocence a relevant factor in evaluating whether defendant was prejudiced by counsel's failure to obtain a plea bargain)); *Lerma–Castillo v. United States*, No. 08-CV-106, 2009 WL 2914235, at *6 (W.D.Tex. Sept. 8, 2009) (citing *Gluzman v. United States*, 124 F.Supp.2d  171, 177-178 (S.D.N.Y. 2000) (finding no ineffective assistance of counsel when petitioner's counsel failed to negotiate guilty plea in light of petitioner's persistent claims of innocence)); *see also Diaz v. United States*, 930 F.2d 832, 835 (11th Cir.1991) (rejecting defendant's claim that he would have accepted a plea agreement when he had not indicated any desire to plead guilty prior to his conviction).  As such, Graves fails to demonstrate prejudice from trial counsel's alleged omission.

### (2) Ineffective Assistance of Appellate Counsel

Graves contends appellate counsel, Daniel Hinchcliff, rendered ineffective assistance of counsel because "Hinchcliff filed a brief in which he cited no issues, no argument and no legal

authority that could possibly help vindicate Graves." In fact, appellate counsel filed a *Lindsey* brief certifying to the Mississippi Supreme Court that the record presented no arguable issues for appeal. The Mississippi Supreme Court agreed with Mr. Hinchcliff and found "there are no arguable issues for appeal." Graves filed a *pro se* appellate brief asserting various claims, which the Mississippi Supreme Court rejected. Graves fails to explain how the Mississippi Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts. Graves' conclusory assertion of ineffective assistance of appellate counsel fails to state a constitutional issue for federal habeas review. *See Miller*, 200 F.3d at 282.

### (3) Sufficiency of the Evidence

Graves argues the evidence presented at trial was insufficient to support a conviction. In assessing the sufficiency of the evidence to support a state conviction, a federal habeas court must inquire, after viewing the evidence in a light most favorable to the prosecution, whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *West v. Johnson*, 92 F.3d 1385, 1393 (5th Cir. 1996). This Court is required to accept all credibility choices and conflicting inferences in favor of the jury's verdict. *See Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005). This requirement encompasses both direct and circumstantial evidence. *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990); *see also Jackson*, 443 U.S. at 324-25. Witness credibility determinations are within the province of the jury and it "retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses." *United States v. Loe*, 262 F.3d 427, 432 (5th Cir. 2001). On habeas review, the court defers to

the trier of fact in resolving conflicts requiring credibility determinations. *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002).

During her testimony, G.W. testified Graves touched her private parts with his hand, inserted his finger in her vagina, and rubbed his penis against her vagina. Other witnesses' testimony essentially confirmed G.W.'s version of the events as related to them by G.W. Defense counsel attempted to impeach G.W's testimony and pointed to inconsistencies in the accounts she told to other individuals. Nevertheless, there was sufficient evidence from which a reasonable jury could conclude that Graves committed the crimes of conviction. On direct appeal, the Mississippi Supreme Court considered Graves' challenge to the sufficiency of the evidence. It found his claim to be without merit. The Mississippi Supreme Court relied on the victim's "substantially uncontradicted" testimony and the testimony of four other witnesses "who all corroborated G.W.'s testimony" to conclude that the evidence supported a finding that Graves sexually assaulted and fondled G.W. *Graves*, 216 So.3d at 1161. Graves fails to explain how the Mississippi Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts.

### (4) **Cumulative Error**

Finally, Graves argues the cumulative effect of errors deprived him of a fair trial. Cumulative error may be an independent basis for federal habeas corpus relief, but only where "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'"

*Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir.1996) (citing *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir.1992)).  Neither meritless claims nor claims that are not prejudicial can be cumulated, regardless of the total number of such errors raised.  *Derden*, 978 F.2d at 1461.  As already explained, Graves has failed to demonstrate any errors of a constitutional dimension. Any errors identified by Graves did not infect the entire trial such that they resulted in a conviction that violates due process.  Thus, he has failed to demonstrate entitlement to habeas relief on a theory of cumulative error.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that Marshall P. Graves' 28 U.S.C. § 2254 petition for writ of habeas corpus be DENIED and DISMISSED with prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court.  A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections.  Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties.  A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court.  Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted

by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED AND ADJUDGED, this the 14th day of May 2020.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE